352 So.2d 933 (1977)
W.A. GASPARINO and City of Tampa, Petitioners,
v.
Corine MURPHY, As Administratrix of the Estate of Larry Marcell Murphy, a Minor Deceased, Respondent.
No. 77-397.
District Court of Appeal of Florida, Second District.
December 7, 1977.
*934 Henry E. Williams, Jr., City Atty., Stann W. Given and Matias Blanco, Jr., Asst. City Attys., Tampa, for petitioners.
Delano S. Stewart, Tampa, for respondent.
OTT, Acting Chief Judge.
We grant the petition for a writ of certiorari.
Petitioner is a City of Tampa policeman. On August 7, 1975 petitioner was on duty during the early morning hours. At about 1:40 a.m. while in uniform and on routine patrol he received notification of a burglary. In covering the "buffer zone"  the area of the neighborhood surrounding the location of the burglary  petitioner encountered Larry Murphy. According to the petitioner, Murphy pulled an eleven-inch butcher knife and attempted to stab him in the neck. Petitioner fired four shots killing Murphy.
Respondent instituted a wrongful death action as administratrix of Murphy's estate. The amended complaint alleged negligence and excessive force. Paragraph 6 of the amended complaint stated:
That the [defendant's] conduct was negligent in that he lacked the requisite training in apprehending a suspect; that he used force in excess of the amount required in arresting the 16 year old suspect; further that each shot fired by the officer was intended to inflict death and not merely to deter the suspect ...
Respondent moved to require petitioner to submit to a compulsory psychiatric examination. The motion stated as follows:
... there is a controversy between plaintiff and defendants as to the mental state of the defendant .. . on August 7, 1976 [sic] and that a psychiatric examination of said defendant is necessary in order that the plaintiff ... may be in a position to determine the state of mine [sic] or any psychiatric problems that the defendant may have had on August 7, 1976. [sic]
The court ordered the compulsory psychiatric examination to be held. It is from this order that the writ of certiorari is sought.
We hold that the order does not conform to the essential requirements of law and may cause material injury to petitioner for which remedy by appeal would be inadequate.
The requirements for the extraordinary writ of certiorari to issue in this situation are set forth in West Volusia Hospital Authority v. Williams, 308 So.2d 634 (Fla. 1st DCA 1975). In that case the trial court had entered an interlocutory order overruling petitioner's [hospital] objections to the production of certain incident reports sought under Fla.R.Civ.P. 1.350(a) (Production of Documents and Things, etc.). The court held:
... interlocutory orders rendered in connection with discovery proceedings may be reviewed by common law certiorari where the petitioner can demonstrate .. . that the order does not conform to the essential requirements of the law and may cause material injury through subsequent proceedings for which remedy *935 by appeal will be inadequate. 308 So.2d at 636.
See Meiklejohn v. American Distributors, Inc., 210 So.2d 259, 263 (Fla. 1st DCA 1968).
It goes without saying that petitioner could suffer irreparable injury by virtue of a compulsory psychiatric examination. Discovery of this type is of the most personal and private nature. The potentially negative effects of requiring petitioner to bare his inner self against his wishes are self-evident.
In Fred Howland, Inc. v. Morris, 143 Fla. 189, 196 So. 472 (1940) the court held that "[a]t common law a compulsory examination ... was unheard of and would have been denounced as a most iniquitous practice." 196 So. at 473.
In Union Pacific Railway Co. v. Botsford, 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 (1891) the court held:
No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. 141 U.S. at 251, 11 S.Ct. at 1001.
The "essential requirements of law" before a party can be subjected to a compulsory mental or physical exam by the court are now set forth in Fla.R.Civ.P. 1.360(a) which provides in relevant part:
[When] the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician. .. . The order may be made only on motion for good cause shown... . [Emphasis supplied]
The two essential prerequisites that must be clearly manifested are: (1) that petitioner's mental condition is "in controversy"  i.e. directly involved in some material element of the cause of action or a defense; and (2) that "good cause" be shown  i.e. that the mental state of petitioner, even though "in controversy," cannot adequately be evidenced without the assistance of expert medical testimony.
With reference to (1), petitioner's mental state is not made the issue (and "in controversy") in this case. Rather, it is his conduct which is at issue; specifically whether such conduct was negligent, unreasonable or involved the use of excessive force. While petitioner's mental state may shed some light on why he acted as he did, it is not involved in either establishing the standard of care or in determining whether or not it has been violated. Neither has it been made an issue by any defense to the complaint.
With reference to (2), expert medical testimony is still inappropriate in the instant case. Even if we assume that aberrant behavior is involved there is no showing that this cannot be adequately evidenced without expert testimony. The behavior, acts or conduct of petitioner, in so far as pertinent to this case, can be both evidenced to and judged by the court or jury without the assistance of expert medical testimony. In this case the testimony of an examining psychiatrist is not shown to be essential or even useful.
The landmark case which interpreted the "in controversy" and "good cause" requirements [under Federal Rule of Civil Procedure 35(a) which is nearly identical to Fla. R.Civ.P. 1.360(a)] was Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). In Schlagenhauf the court held that the "in controversy" and "good cause" requirements of Rule 35:
... are not met by mere conclusory allegations of the pleadings  nor by mere relevance to the case  but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination. 379 U.S. at 118, 85 S.Ct. at 242-43.
Allegations of negligent conduct coupled with the claim that there is a controversy as to petitioner's mental state does not place a party's mental state "in controversy" nor make a showing of "good cause."
*936 We could not agree more with the supreme court's statement that to "... properly to balance [the] competing interests is a delicate and difficult task." Hickman v. Taylor, 329 U.S. 495, 497, 67 S.Ct. 385, 387, 91 L.Ed. 451 (1947). Under the facts and circumstances we feel that no basis has been demonstrated for the invasion of petitioner's right of privacy. Thus, we hold that the discovery sought might cause irreparable harm to the petitioner.
Accordingly, the writ of certiorari is granted, the order of the trial court reversed and set aside with directions that the motion of respondent be denied.
RYDER, J., and McNULTY, JOSEPH P. (Ret.), Associate Judge, concur.